# Exhibit 2

Joshua Jordan, admitted Pro Se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prehired, LLC, et al,<br>Debtors. | JORDAN'S RESPONSE TO LETTER WITH PROPOSAL [FOR SETTLEMENT PURPOSES ONLY] |

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
This letter is provided for settlement purposes only and is made in furtherance of a compromise negotiation under Rule 408 of the Federal Rules of Evidence. The contents of this letter are privileged, confidential, and may not be used as evidence or disclosed in any court or other legal proceedings.

Dear Mr. Palacio,

    I am writing in response to your recent communication on behalf of the trustee regarding the letter titled "Withdrawals from Wells Fargo Business Checking Accounts". Before delving into the substance of my response, I want to make my position and intentions clear. While I hold no ill will towards you or the trustee, I believe it's important to address what I perceive as unfulfilled duties. In my experience over the past two years of litigation, I've found that some opposing counsel have misinterpreted my pro se status and cordial demeanor as signs of weakness. To avoid any such misunderstanding, I want to state upfront that while I genuinely seek an amicable resolution to our issues, I am fully prepared to litigate and defend my rights up to the Supreme Court if necessary. I believe this case presents several unique circumstances that may require higher court interpretation due to the lack of clear precedent. That said, I remain open to scheduling a call where we can discuss these

1 - Response for Settlement Purposes Only

matters freely and explore creative solutions. I hope you'll understand and forgive the factual and unemotional nature of the statements that follow; they are not meant to create conflict but to clearly articulate my position as we work towards a resolution.

That being said, the following is my response to your recent communication regarding the claim for turnover of funds allegedly withdrawn from Wells Fargo accounts associated with Prehired Accelerator, LLC and Prehired Recruiting, LLC. After careful consideration of the facts, timeline, and legal context, I believe I have a proposal that not only addresses the immediate concerns but also resolves broader legal issues in a manner beneficial to all parties.

## Background Timeline of Events

In late 2022, following PreHired, LLC's bankruptcy filing, all bank accounts associated with PreHired entities in Delaware at Bank of America were closed. On November 23, 2022, the trustee, Don Beskrone, stated in an email, "I will make demand for turnover of funds from banks and other persons or entities holding funds of the Debtors directly to them." See Exhibit A. I can confirm at that time that all bank accounts for the Prehired bankrupt entities were indeed closed and/or funds moved to the trustee's accounts.

Importantly, Mr. Beskrone confirmed that he had taken control of all accounts belonging to the estate and moved all funds to the estate's accounts. However, the Wells Fargo accounts associated with PreHired Accelerator, LLC and PreHired Recruiting, LLC were not touched at this time. These accounts were separate from the Delaware entities and were not part of the immediate bankruptcy proceedings.

Shortly after November 23, 2022, during the meeting with myself, counsel, and the Trustee on a phone call (and the Delaware AG also may have brought this up in my 341 meeting), I indicated that I was willing to negotiate or discuss any remaining accounts that may be alleged to have a relationship to the bankruptcy estate. Specifically, if the trustee believed that the accounts for Prehired entities with

bank accounts at Wells Fargo were subject to the bankruptcy, I expressed my openness to discuss how to resolve those funds.

In good faith, even though I disagreed that these Wells Fargo bank accounts belonged to the estate (which the trustee's actions seemed to confirm), I chose to wait and not use the money until the trustee had reached out to me to discuss. However, no follow-up was made by the trustee or any representative regarding these specific accounts.

On November 28, 2023, more than a year after Mr. Beskrone's confirmation that he had taken control of all estate accounts, I received a notice from Wells Fargo at my home address - not the trustee's address. This notice informed me that the accounts at Wells Fargo were to be closed, and Wells Fargo warned that failure to do so could result in a delay of several months before receiving a check for the funds. See Exhibit B.

Given these circumstances - the significant passage of time (over a year), the lack of follow-up by the trustee, the explicit instruction from Wells Fargo to move the funds, and the trustee's prior confirmation that he had already moved all estate funds - I reasonably believed that these funds were not subject to the bankruptcy estate. Consequently, I accessed these accounts, transferred the funds to FourLetter LLC, and subsequently, FourLetter LLC used these funds for legitimate business expenses over the following year (to present).

It wasn't this month in October 2024, almost two years after Mr. Beskrone confirmed all funds belonging to the PreHired debtors had been moved to the bankruptcy estate's accounts, that the trustee reached out claiming these funds should have gone to the estate. This claim comes two years too late and contradicts the trustee's own previous assertions and actions.

As of today, those funds have been spent, and FourLetter LLC has no remaining assets from those transfers. I acted as any reasonable person would have given the circumstances, especially considering the explicit instructions from Wells Fargo and the trustee's long silence on these specific

3 - Response for Settlement Purposes Only

accounts. And in full transparency, Fourletter has exactly $529.15 in its account (which will probably be gone by the year's end) and I personally have $187.24 to my name.

**Proposal for Comprehensive Resolution**

While the evidence and actions of the trustee demonstrate that the estate is not entitled to the monies you're claiming, I would like to propose a settlement that presents a mutual opportunity beneficial to both parties. This proposal aims to address the estate's desire for funds while ensuring that Prehired fulfills its legal duty to indemnify me personally under the **employment contract, operating agreement**, and **assignment agreement**.

As an **assignee, executive,** and **employee** of Prehired, I am entitled to indemnification from all claims, proceedings, judgments, and monies related to actions taken on behalf of the company. Despite this obligation, the estate has not fulfilled this duty in the two years since the trustee took over, also despite numerous opportunities to do so. Therefore, I propose the following resolution:

1. **Assumption of Judgment**: The trustee, on behalf of the Prehired estate, would formally assume responsibility for the $1.5 million judgment levied against me by the State of Washington. This action would satisfy the legal indemnification obligations that the estate has thus far failed to fulfill.

2. **Immediate Settlement of the Judgment**: Upon assumption by the trustee, this judgment would be immediately settled and released under the existing settlement agreement with the State of Washington, as detailed in the Stipulated Final Judgment and Order [hereinafter "Order"] entered on November 17, 2023. In re Prehired, LLC, No. 22-11007 (JTD), Adv. Proc. No. 23-50438 (JTD) (Bankr. D. Del. Nov. 17, 2023).

**Legal Basis for Assumption and Settlement**

The assumption and immediate settlement of the judgment by the estate is supported by several legal arguments:

4 - Response for Settlement Purposes Only

1. **Broad Release in Federal Order**: The Order provides a comprehensive release that should cover my actions as CEO. Paragraph 47 states: "The Bureau and States release and discharge the Prehired Defendants from all potential liability for law violations that the Bureau or any of the States has or might have alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau and States know about them as of the Effective Date." This release is intended to cover all potential claims related to Prehired's business practices, including those against its representatives.

2. **Definition of "Prehired Defendants"**: The Order defines "Prehired Defendants" to include "successors and assigns" (Order ¶ 29(k)). As an assignee under the Assignment Agreement, I fall within this definition and should be covered by the release. Through a settlement between us, may require me not to take an adversarial proceeding all the way to the Supreme Court over the coming years. I acknowledge that in my motion to enforce, the court denied my motion, citing procedural reasons and disagreeing with my argument that I should be included in the definition of "Prehired Defendants," which encompasses "assigns." While I disagree with this finding, I intend to file an adversarial proceeding against the State of Washington in the coming weeks and although I anticipate the court will again deny my request for relief, I am fully prepared to pursue this matter through appeal, starting with the district court, then the appellate court, and ultimately to the Supreme Court, if necessary. I believe this case involves a clear abuse of discretion, particularly regarding the legal interpretation of the term "assigns." It is improper to redefine a commonly accepted legal term after an order has been entered, especially when it fulfills contractual obligations to intervenors like myself, and I will appeal this issue to the highest level to ensure that the original meaning of the term is upheld, even if it requires Supreme Court intervention. Having the trustee support me in this regard would be gladly accepted.

3. **Voiding of ISAs**: The Order declares all ISAs void ab initio (Order ¶ 33), which fundamentally undermines the basis for the judgment against me. It is legally inconsistent to hold me liable for contracts that have been declared to have never existed and been fully settled and released.

5 - Response for Settlement Purposes Only

4. **Comprehensive Monetary Judgment**: The Order entered a monetary judgment intended to cover all harm caused by Prehired and its representatives (Order ¶ 34). Allowing an additional judgment against me personally would amount to impermissible double recovery.

5. **Res Judicata and Collateral Estoppel**: The comprehensive nature of the Federal Order should preclude further judgments related to the same conduct under principles of res judicata and collateral estoppel.

6. **Full Faith and Credit**: Enforcing the judgment against me personally would violate the Full Faith and Credit Clause by failing to give proper effect to the Federal Order's comprehensive resolution of claims against Prehired and related parties.

### Benefits of this Proposal

1. **Fulfillment of Legal Obligations**: This solution allows the estate to fulfill its indemnification obligations to me as a former executive, employee, and assignee of Prehired.

2. **Resolution of Potential Claims**: This approach resolves multiple issues (the judgment, indemnification obligations, and fund transfer dispute) in one action.

3. **Legal Clarity**: It addresses the inconsistency between the Order voiding the ISAs and the subsequent judgment against me.

4. **Potential Financial Benefit**: <u>If we can reach an agreement on this proposal, I may be able to arrange for a settlement payment to the estate, the amount of which can be discussed once we have agreement on the broader framework.</u>

### Addressing Potential Concerns

1. **Novelty of the Approach**: I acknowledge that this proposal is creative and may be unprecedented. However, the unique circumstances of this case, particularly the broad release language in the Order, provide a sound legal basis for this approach.
2. **Court Approval**: I propose a two-step approach. First, we agree in principle, subject to court authorization. I am willing to draft the motion for court approval to minimize the burden on your team.
3. **State of Washington's Position**: Given that the State drafted and agreed to the broad release language, they should have limited grounds to object. However, I'm open to discussing strategies to address any potential objections.

### Financial Considerations

While I maintain that the funds in question were lawfully transferred and used, I am willing to explore a settlement in good faith. Despite that both FourLetter and Jordan have just over $700 in funds between the two of them, I may be able to secure a loan to settle a portion of the amount in dispute.

It's important to note that any settlement would be a gesture of good faith on my part, as I believe the evidence clearly shows that I acted reasonably and appropriately given the circumstances. However, I see this as an opportunity for the estate to gain funds by taking on a liability that would be **moot/already settled** under the terms of the Washington settlement agreement.

The exact amount would need to be discussed once we have agreement on the broader framework. I believe this approach offers a pragmatic solution that could benefit all parties involved.

### Legal Considerations

While I sincerely hope we can reach an amicable resolution through this proposal, I believe it's important to address some additional legal considerations:

7 - Response for Settlement Purposes Only

1. **Petition to Amend/Clarify the Order**: If we cannot reach an agreement through this proposal, I intend to petition the court to amend or clarify the Order to explicitly include me as a released party. I believe the legal arguments presented earlier in this letter provide a strong basis for such an amendment or clarification. I would greatly appreciate the trustee's support in this endeavor, as it aligns with the estate's indemnification obligations and the intent of the comprehensive settlement.

2. **Commitment to Legal Resolution**: I want to be transparent about my commitment to resolving Jordan being defined as a released party. If necessary, I am prepared to pursue this issue through all available legal avenues, including appeals to higher courts and potentially to the Supreme Court. As of right now, this would only involve the State of Washington as a named defendant.

3. **Indemnification Obligation**: While I remain disappointed that the Order did not clearly release me as an officer and executive, and only as an assignee, despite the estate's obligation and numerous opportunities to do so, I want to assure you that if we cannot reach a settlement, at this time I do **not** intend to sue the estate or the trustee for this oversight. My goal is to move forward constructively.

4. **Path for Potential Litigation**: However, in the interest of setting clear boundaries, I must state that if the estate chooses to pursue litigation against me personally over this matter, I will be compelled to file a counterclaim. This would include multiple counts, potentially including allegations of gross negligence, naming the trustee in both official and personal capacities. I sincerely hope we can avoid this scenario through a mutually agreeable resolution. I mean this with all seriousness and respect – I have a family and three kids under 6 – and every minute I spend litigating over things that I am willing to let go is one minute I don't spend with them.

I raise these points not to create conflict, but to underscore the seriousness of my position and my strong preference for an amicable resolution. I believe that addressing these issues proactively through the proposal outlined in this letter is in the best interest of all parties involved. It is my sincere hope that we can work together to resolve this matter efficiently and equitably, avoiding protracted legal proceedings.

8 - Response for Settlement Purposes Only

**Next Steps**

1. I welcome your initial thoughts or concerns about this proposal. It does not need to be formal – a short email response will do.

2. If you're amenable, I suggest we schedule a call to discuss the details further.

3. With your agreement in principle, we can explore the possibility of seeking court approval for this arrangement.

**Conclusion**

This approach not only offers a pragmatic solution to the immediate issues but also addresses fundamental legal inconsistencies in the judgments against PreHired and myself. By accepting responsibility for a judgment that is arguably based on nullified contracts, and then immediately benefiting from the release in the Order, the estate can efficiently resolve these complex issues while potentially gaining funds it would not otherwise be entitled to.

I believe this proposal presents a unique opportunity to rectify legal inconsistencies, fulfill indemnification obligations, and potentially benefit the estate's creditors. I look forward to discussing this further and working towards a resolution that serves all parties' interests.

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
This letter is provided for settlement purposes only and is made in furtherance of a compromise negotiation under Rule 408 of the Federal Rules of Evidence. The contents of this letter are privileged, confidential, and may not be used as evidence or disclosed in any court or other legal proceedings.

Respectfully submitted on October 16, 2024.

By: /s/ Joshua Jordan
Joshua Jordan, admitted pro se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

9 - Response for Settlement Purposes Only